UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MONTENEGRO SALAZAR,<br><br>                    Petitioner,<br><br>         v.<br><br>WARDEN, FCI-MENDOTA,<br><br>                    Respondent. | No.  1:23-cv-00039-SKO (HC)<br><br>**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS, DISMISSING PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT**<br><br>**[Doc. 17]** |

Petitioner is a federal prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Both parties having consented to the jurisdiction of the Magistrate Judge, on January 30, 2023, the case was assigned to the undersigned for all further proceedings pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 12, 13, 14.)

On December 12, 2022, Petitioner filed the instant habeas petition.  (Doc. 1.)  On March 15, 2023, Respondent filed a motion to dismiss the petition.  (Doc. 17.)  Respondent contends the petition should be dismissed for mootness, failure to exhaust, and lack of jurisdiction.  (Doc. 17.) Petitioner did not file an opposition.  Having reviewed the pleadings, and in light of recent changes in BOP procedures, the Court will GRANT Respondent's motion to dismiss and DISMISS the petition.

/////

/////

**DISCUSSION**

**I.     Motion to Dismiss**

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). The Court will review the motion under Rule 4 standards. See Hillery, 533 F. Supp. at 1194 & n. 12.

**II.    Background**

Petitioner is serving a 135-month term of imprisonment for his conviction of conspiracy to manufacture and distribute cocaine intending, knowing and with reasonable cause to believe that the cocaine will be unlawfully imported into the United States in violation of 21 U.S.C. § 963. (Doc. 17-1 at 7-10.[1])

Petitioner is incarcerated at Federal Correctional Institution in Mendota, California. In his petition, Petitioner claims that the Bureau of Prisons ("BOP") determined him ineligible for First Step Act ("FSA") credits because he is a deportable alien. (Doc. 1 at 1-5.) Since then, BOP records indicate that Petitioner has been awarded 150 days of FSA credits toward early transfer to supervised release, and he has an advanced FSA projected release date of January 10, 2029. (Doc. 17-1 at 10, 15.)

According to the BOP's records of its Administrative Remedy Program, Petitioner has never submitted an Administrative Remedy Request concerning the claims presented herein. (Doc. 17-1 at 10-11, 17-18.)

**III.   The First Step Act**

The First Step Act was enacted on December 21, 2018, and implemented a number of prison and sentencing reforms, including computation of good time credits, reducing and

---

[1] Citations are to ECF pagination unless noted.

2

restricting mandatory minimum sentences, safety valve eligibility, retroactive application of the Fair Sentencing Act, and the availability of early release. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018).

With respect to earned time credit, the Ninth Circuit has described the First Step Act's amendments as follows:

> [P]aragraph 102(b)(1) amends [18 U.S.C.] § 3624 by adding subsection (g), which is relevant to the Act's creation of an earned time credit system. [132 Stat.] at 5210-13. The Act requires that, within 210 days of its enactment, the Attorney General establish a "risk and needs assessment system" to, broadly speaking, review each prisoner's recidivism risk level, award earned time credit as an incentive for participation in recidivism reduction programming, and "determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624." § 101(a), 132 Stat. at 5196– 97. Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release. § 102(b), 132 Stat. at 5210–13.

Bottinelli v. Salazar, 929 F.3d 1196, 1197–98 (9th Cir. 2019).

In accordance with 18 U.S.C. § 3632, the United States Department of Justice ("DOJ") published the risk and needs assessment system on July 19, 2019. Press Release, U.S. Dep't of Just., Department of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System (July 19, 2019), https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (*last visited* April 26, 2023).

With respect to implementation of the risk and needs assessment system, 18 U.S.C. § 3621(h) provides:

> (1) In general.--Not later than 180 days after the Attorney General completes and releases the risk and needs assessment system (referred to in this subsection as the "System") developed under subchapter D, the Director of the Bureau of Prisons shall, in accordance with that subchapter--
>
>> (A) implement and complete the initial intake risk and needs assessment for each prisoner (including for each prisoner who was a prisoner prior to the effective date of this subsection), regardless of the prisoner's length of imposed term of imprisonment, and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination;
>>
>> (B) begin to expand the effective evidence-based recidivism reduction programs and productive activities it offers and add any new evidence-based recidivism reduction programs and productive activities necessary to effectively implement the System; and

> (C) begin to implement the other risk and needs assessment tools necessary to effectively implement the System over time, while prisoners are participating in and completing the effective evidence-based recidivism reduction programs and productive activities.
>
> (2) Phase-in.--In order to carry out paragraph (1), so that every prisoner has the opportunity to participate in and complete the type and amount of evidence-based recidivism reduction programs or productive activities they need, and be reassessed for recidivism risk as necessary to effectively implement the System, the Bureau of Prisons shall--
>
>> (A) provide such evidence-based recidivism reduction programs and productive activities for all prisoners before the date that is 2 years after the date on which the Bureau of Prisons completes a risk and needs assessment for each prisoner under paragraph (1)(A); and
>>
>> (B) develop and validate the risk and needs assessment tool to be used in the reassessments of risk of recidivism, while prisoners are participating in and completing evidence-based recidivism reduction programs and productive activities.

18 U.S.C. § 3621(h)(1)–(2).

Pursuant to 18 U.S.C. § 3621(h)(1), all inmates in the BOP system were to receive an initial assessment using the risk and needs assessment system known as the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN") by January 15, 2020. Press Release, U.S. Dep't of Just., <u>Department of Justice Announces Enhancements to the Risk Assessment System and Updates on First Step Act Implementation</u> (Jan. 15, 2020), https://www.justice.gov/opa/pr/department-justice-announces-enhancements-risk-assessment-system-and-updates-first-step-act (*last visited* April 26, 2023). On January 13, 2022, the Department of Justice announced that the BOP had finalized the FSA time credit rule, and on January 19, 2022, the final rule was published. FSA Time Credits, 87 Fed. Reg. 2705-01, 2022 WL 159155 (Jan. 19, 2022) (codified at 28 C.F.R. §§ 523, 541.)

Prisoners "who successfully complete[ ] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A). A prisoner determined "to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities." 18

U.S.C. § 3632(d)(4)(A)(ii).

Inmates may begin earning First Step Act time credits ("FTCs") after the inmate's term of imprisonment commences, but an inmate cannot earn FTCs for programming or activities in which he or she participated prior to December 21, 2018. 28 C.F.R. § 523.42.  Further, an inmate can earn retroactive application of time credits for programming or activities in which he or she participated from December 21, 2018, to January 13, 2022.  Id.

"Section 3624(g) details the criteria for when a prisoner becomes eligible, considering earned time credit, for transfer to prerelease custody or supervised release," Bottinelli, 929 F.3d at 1198, and provides that the "Attorney General, in consultation with the Assistant Director for the Office of Probation and Pretrial Services, shall issue guidelines for use by the Bureau of Prisons in determining the appropriate type of prerelease custody or supervised release and level of supervision for a prisoner placed on prerelease custody pursuant to this subsection," 18 U.S.C. § 3624(g)(6)(A).

## IV.     Mootness

Article III of the United States Constitution limits the federal courts to deciding "cases" and "controversies."  To ensure that any matter presented to a federal court meets that requirement, the Court considers the doctrines of standing, ripeness, and mootness.  See Poe v. Ullman, 367 U.S. 497, 502-505 (1961).  The case or controversy requirement of Article III of the Federal Constitution deprives the Court of jurisdiction to hear moot cases.  Iron Arrow Honor Soc'y v. Heckler, 464 U.S. 67, 70 (1983); NAACP, Western Region v. City of Richmond, 743 F.2d 1346, 1352 (9th Cir. 1984).  A case becomes moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1984).  The Federal Court is "without power to decide questions that cannot affect the rights of the litigants before them." North Carolina v. Rice, 404 U.S. 244, 246 (1971) (*per curiam*) (quoting Aetna Life Ins. Co. v. Hayworth, 300 U.S. 227, 240-241 (1937)).

Petitioner alleges the BOP found him ineligible to earn FTCs solely because he is an alien.  Before November 18, 2022, the BOP took the position that inmates with detainers were ineligible for FSA credits.  On November 18, 2022, the BOP issued Program Statement 5410.01 which

modified the BOP procedures to allow inmates with detainers to earn FTCs; inmates could not have those FTCs applied until the detainers were resolved. U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement No. 5410.01, <u>First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4)</u>, at 17 (Nov. 18, 2022), https://www.bop.gov/policy/progstat/5410_01.pdf (*last visited* April 26, 2023).

Recently, on February 6, 2023, the BOP issued a change notice to the program statement in which the BOP deleted the requirement that inmates must have no detainers to have FTCs applied to their sentence. U.S. Dep't of Justice, Federal Bureau of Prisons, <u>Change Notice to Program Statement No. 5410.01, First Step Act of 2018 - Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4)</u> (Feb. 6, 2023), https://www.bop.gov/policy/progstat/5410.01_cn.pdf (*last visited* April 26, 2023). Thus, Petitioner is no longer barred from earning FTCs and having them applied to his sentence due to the detainer. BOP records indicate that Petitioner is eligible to earn and apply FSA credits, and the BOP has applied 150 days toward his sentence resulting in an advanced release date. Thus, Respondent correctly asserts that the underlying matter has become moot.

## V.     Exhaustion

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. <u>Martinez v. Roberts</u>, 804 F.2d 570, 571 (9th Cir. 1986); <u>Chua Han Mow v. United States</u>, 730 F.2d 1308, 1313 (9th Cir. 1984); <u>Ruviwat v. Smith</u>, 701 F.2d 844, 845 (9th Cir. 1983). The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. <u>Brown v. Rison</u>, 895 F.2d 533, 535 (9th Cir. 1990). Thus, "because exhaustion is not required by statute, it is not jurisdictional." <u>Id</u>. If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

The first step in seeking administrative remedies is a request for informal resolution. 28 C.F.R. § 542.13. When informal resolution procedures fail to achieve sufficient results, the BOP

makes available to inmates a formal three-level administrative remedy process: (1) a Request for Administrative Remedy ("BP-9") filed at the institution where the inmate is incarcerated; (2) a Regional Administrative Remedy Appeal ("BP-10") filed at the Regional Office for the geographic region in which the inmate's institution is located; and (3) a Central Office Administrative Remedy Appeal ("BP-11") filed with the Office of General Counsel.  28 C.F.R. § 542.10 et seq.

According to Respondent, Petitioner has never requested relief through the BOP's administrative remedy process concerning the instant claims.  Thus, the claims are unexhausted.  The exhaustion requirement "is not lightly to be disregarded." Murillo v. Mathews, 588 F.2d 759, 762, n.8 (9th Cir. 1978) (citation omitted).  A "key consideration" in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme[.]" Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation marks omitted).  Petitioner contends that exhaustion is futile since the BOP's position that he is statutorily barred from earning FTCs is established policy.  As previously discussed, the BOP has since altered its position such that he is not statutorily barred from earning FTCs.  Therefore, exhaustion would not be futile, and the exhaustion requirement should not be excused in this case.

## VI.     Failure to State a Claim for Relief

Respondent correctly notes that this Court lacks jurisdiction to review BOP discretionary, individualized, decisions concerning release to home confinement and application of time credits.  As a matter of law, 34 U.S.C. § 60541(g) grants to the Attorney General the discretion to release certain prisoners to serve the latter part of their sentence on home confinement.  As the statute makes clear, the "Attorney General" is granted the discretion and "may release" some eligible offenders.  Id.  Whether or not the BOP grants Petitioner credits under the FSA is entirely within its discretion.  The "failure to receive relief that is purely discretionary in nature does not amount to a deprivation of a liberty interest." See Mejia Rodriguez v. Reno, 178 F.3d 1139, 1146 (11th Cir. 1999) (citing Conn. Bd. of Pardons v. Dumschat, 452 U.S. 458, 465 (1981)).

Petitioner contends that the BOP has determined him ineligible for early release under the FSA. He asserts that the BOP has misinterpreted the statute to bar him from earning FSA credits. As previously discussed, Program Statement 5410.01, issued on November 18, 2022, modified the BOP's previous position that inmates with detainers were ineligible for FSA credits and held that inmates with detainers *could earn* FSA credits, but not *spend* them unless the detainers were resolved. On February 6, 2023, the BOP further modified the program statement by deleting the requirement that inmates have no detainers prior to having FTCs applied to their sentence. Since Petitioner is not barred from earning FTCs and having them applied to his sentence, the petition does not present a claim for relief.

**ORDER**

Based on the foregoing, IT IS HEREBY ORDERED:

1) Respondent's motion to dismiss the petition is GRANTED;

2) The petition for writ of habeas corpus is DISMISSED WITH PREJUDICE; and

3) The Clerk of Court is DIRECTED to enter judgment and close the case.

IT IS SO ORDERED.

Dated:   **May 3, 2023**                    /s/ *Sheila K. Oberto*
                                            UNITED STATES MAGISTRATE JUDGE